UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DAVID ROWE,

                Plaintiff,

  -against-                                              5:15-CV-00063 (LEK/TWD)

AAA WESTERN AND CENTRAL
NEW YORK, INC.,

                Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff David Rowe commenced the present action against Defendant AAA Western and Central New York, Inc. pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. Dkt. Nos. 1 ("Complaint"), 13 ("Amended Complaint"). Presently before the Court is AAA's Motion for Summary Judgment. Dkt. No. 27 ("Motion"); see also Dkt. Nos. 27-1 ("Memorandum"), 27-2 ("Statement of Material Facts"), 32 ("Opposition"),[1] 37 ("Reply"). For the following reasons, the Court reserves decision on AAA's Motion pending further development of the record.

**II.    BACKGROUND**

    **A.  Factual History**

AAA is a not-for-profit member services organization that "provides its members with travel, insurance, financial, and automotive services." Mem. at 2. Rowe began working for

---

[1] Because Rowe filed his response to AAA's statement of material facts, his separate statement of material facts, and his memorandum of law in one document, the Court refers to that document as Rowe's Opposition.

AAA's East Syracuse, New York, branch as a "Road Problem Solver Technician" around October 16, 2012. SMF ¶ 2. Rowe's responsibilities as a road technician included "driving AAA vehicles and assisting customers by performing battery tests, providing battery boosts, replacing batteries, repairing battery cables, and performing tire service and changes." Id. At his deposition, Rowe stated that battery-related work was an essential part of his job. Id. ¶ 3; Dkt. No. 27-17 ("Exhibit A") at 106:18–21. Rowe received praise from customers on several occasions for his work, Opp'n pt. 3, ¶ 2, though AAA disciplined him with some regularity for work-related issues, including making mistakes on his paperwork, "engaging in a verbal altercation," leaving work without telling his supervisor, having trouble performing various aspects of his road technician job, and "causing damage to a [AAA] member's vehicle," Mem. at 3.

Around July 2, 2013, AAA received a fax from Ann M. Roman, a nurse practitioner working at the oncology practice where Rowe had sought treatment. SMF ¶ 3; Dkt. No. 27-9 ("Exhibit E"). The letter stated that because of issues relating to his colon cancer, Rowe would have "to be on restricted light duty/office work" since he would no longer be able to change tires or perform battery-related work. Ex. E at 2. Not long after this, Rowe sent AAA the necessary paperwork for receiving short-term disability insurance. SMF ¶ 4. The paperwork included a "Notice of Proof of Claim" filled out by his doctor, and it indicated that Rowe could not work starting July 2, 2013. Id.; Dkt. No. 27-10 ("Exhibit F"). It also stated that Rowe suffered from "permanent restrictions." Ex. F. Rowe soon began receiving the short-term disability insurance benefits for which he had applied. SMF ¶ 5.

From July 2013 to August 2014, Rowe underwent chemotherapy. Id. ¶ 6. Rowe later testified that he was able to drive only "on a limited basis" during this time. Id. From July 2013

2

to the day he was fired, Rowe did not tell anybody at AAA when he would be able to work again. Id. ¶ 7.[2]

In July 2013, after receiving this information about Rowe's disability, Esther Renne and DeAnn Swiatek—two AAA Human Resources employees—"arranged for Rowe to be considered for a vacant Member Services Position in AAA's Contact Center." Id. ¶ 8. The Contact Center job entailed taking customer service calls and "is less physically demanding than the Road technician job that Rowe held." Id. It is Rowe's belief that AAA never seriously considered him for the position. Opp'n pt. 2, ¶ 8. As part of his application for the position, Rowe, like the other applicants, had to take "the customer Contact Center simulation assessment," which tests whether an applicant is capable of adequately fulfilling the duties of a Contact Center employee. SMF ¶ 8. During the assessment, the applicant is required to take several customer service calls. Id. ¶ 9. Applicants receive a grade based on their performance during the calls, and they must obtain a score of sixty-two or higher to pass. Id. A passing score shows that the applicant has the "minimal skills" needed to hold a job in the Contact Center. Id. Rowe failed the assessment, receiving a score of fifty-eight. Id. Accordingly, AAA determined that Rowe was not qualified for a job in the Contact Center. Id. Notably, the persons hired for Contact Center jobs around this time "all scored well above a 62, having received the following scores: 79, 93, 77, 81, 69 and 90." Id. Rowe later expressed uncertainty about whether he could have successfully performed the duties associated with a Contact Center position. Id. ¶ 10. Specifically, he said that he was not sure he could have done the job because AAA never gave him the chance. Ex. A at 136:14–18.

---

[2] Rowe disputes this fact, Opp'n pt. 2, ¶ 7, yet he fails to cite any evidence suggesting that he did in fact inform someone at AAA when he could return to work.

Rowe states that on September 12, 2013, he sent AAA a "medical document" providing an estimated return-to-work date of March 12, 2014. Opp'n pt. 3, ¶ 10. However, the evidence cited in support of this statement—a report documenting the findings of a New York State Division of Human Rights ("NYSDHR") investigation into Rowe's case—suggests only that the medical document was "faxed over to Guardian (3rd party)." Dkt. No. 32-3 ("Exhibit 3") at 2. Nowhere does the NYSDHR report confirm that AAA ever received the document.

AAA, which is particularly busy in the winter, usually "begins hiring additional fleet employees in October and November to ensure that its staff is at full capacity." SMF ¶ 11. Acting on the belief that Rowe was suffering from permanent restrictions that kept him from doing essential parts of his road technician job, AAA fired him on or about October 23, 2013. Id. According to AAA, Rowe was terminated because it needed to hire someone who could fulfill the responsibilities of a road technician during the busy winter season. Id. Rowe, on the other hand, contends that AAA fired him "because of his cancer diagnosis . . . and . . . the challenges that arose therefrom." Opp'n pt. 2, ¶ 11.

Since AAA fired Rowe, he has held only one job, working as a bus driver for the Baldwinsville School District in early 2015 for a few weeks. SMF ¶ 12. At his deposition, Rowe stated that he had to quit his job as a bus driver because he experienced fatigue in the morning and afternoon, though he stated elsewhere that he had to leave because his recovery prevented him from working in the afternoon only. Id. Since his termination, Rowe has not applied to any jobs other than the bus driver position. Id. ¶ 13. His explanation is that an employer will not hire him if he is honest about the reason AAA terminated him, namely, his cancer, and if he lies about

4

his medical history, an employer will fire him if it learns of his deception. Dkt. No. 32-1 ("Rowe Affidavit") ¶ 14.

Rowe began receiving Social Security Disability Insurance ("SSDI") benefits soon after AAA fired him. SMF ¶ 14. In his August 2, 2013 application for SSDI benefits, he stated that he could no longer work as of July 2, 2013, as a result of his disabling condition. Id. In both his application for SSDI benefits and his application for the bus driver position, he stated that his job at AAA had involved installing batteries and changing tires. Id. ¶ 15. Though Rowe's short-term disability benefits ended in January 2014, his long-term disability benefits began around March 2014, and he still receives those benefits in addition to SSDI benefits. Id. ¶ 16.

At his deposition, Rowe confirmed that he did not plan to seek employment in the immediate future. Id. ¶ 17; Ex. A. at 147:19–21. He also stated that he could not say for sure whether he would ever be able to work again. SMF ¶ 17; Ex. A. at 147:9–18. According to Rowe, fatigue plus his need to make frequent trips to the bathroom were keeping him from holding down a job. SMF ¶ 17; Ex. A. at 147:24–148:8.

### B. The Summary Judgment Motion

On August 27, 2016, AAA moved for summary judgment, arguing that Rowe fails to state a prima facie case under the ADA because his cancer rendered him unqualified for the road technician job and he was never qualified for the Contact Center position. Mem. at 1. In particular, AAA argues that Rowe was unable to perform essential functions of his road technician job and failed to meet one of the prerequisites for the Contact Center job, namely, passing the simulation assessment. Id. AAA further claims that Rowe is estopped from asserting an ADA claim because he has failed to adequately explain the contradiction between that claim

5

and his application for SSDI benefits, which stated that he was unable to work. Id. at 12. Rowe responds that the praise he received from customers he served as a road technician demonstrated his ability to fulfill the responsibilities of a Contact Center position, that AAA refused to make a good-faith effort to find him a position within the organization that would accommodate his condition, and that he failed the simulation assessment because he took it soon after he discovered he had cancer. Opp'n pt. 4, at 14–16.

## III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir.1998). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

### A. Rowe's Qualifications

"Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in McDonnell Douglas Corp. v. Green . . . ." McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009). To state a prima facie case under the ADA, a plaintiff must demonstrate that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006) (quoting Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001)). Failure to reasonably accommodate "the known physical or mental limitations of an otherwise qualified individual with a disability" constitutes discrimination under the ADA. 42 U.S.C. § 12112(b)(5)(A); accord McBride, 583 F.3d at 96.

7

The EEOC has promulgated regulations[3] clarifying the requirement that an ADA plaintiff show that he was otherwise qualified to perform the essential functions of his job. 29 C.F.R. § 1630.2(m). According to the EEOC, "[t]he term 'qualified,' with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires *and*, with or without reasonable accommodation, can perform the essential functions of such position." Id. (emphasis added). Thus, in determining whether a plaintiff is otherwise qualified, the court must first "decide whether the individual satisfies the prerequisites for the position, such as having the appropriate education, employment experience, skills, or license." Mark v. Burke Rehab. Hosp., No. 94-CV-3596, 1997 WL 189124, at *4 (S.D.N.Y. Apr. 17, 1997) (citing § 1630.2(m)). The next step is to determine whether the plaintiff can perform the essential functions of the job, with or without a reasonable accommodation. § 1630.2(m). "Although the term 'essential functions' is not defined by the ADA, [EEOC] regulations . . . indicate that it encompasses 'the fundamental job duties of the employment position.'" McBride, 583 F.3d at 98 (quoting § 1630.2(n)(1)). "In determining whether a job function is essential, 'consideration shall be given to the employer's judgment as to what functions of a job are essential.'" Rodriguez v. Steven Schor, Inc., No. 09-CV-2197, 2011 WL 743476, at *3 (E.D.N.Y. Jan. 21, 2011) (quoting § 12111(8)). It is the plaintiff's burden to prove that he is otherwise qualified for his job. Adams v. Rochester Gen. Hosp., 977 F. Supp. 226, 233 (W.D.N.Y. 1997) (citing Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 138 (2d Cir. 1995)).

---

[3] EEOC regulations "are entitled to great deference in interpreting the ADA." Hernandez v. Int'l Shoppes, LLC, 100 F. Supp. 3d 232, 257 (E.D.N.Y. 2015) (quoting Muller v. Costello, 187 F.3d 298, 312 (2d Cir. 1999)).

## 1. The Road Technician Position

There is no genuine dispute that, at the time of his termination, Rowe could not perform some of the essential functions of his road technician job, thereby rendering him unqualified for the position. At his deposition, Rowe agreed that battery-related work was one of the essential functions of his road technician job. Ex. A. at 106:18–21. Moreover, in his applications for SSDI benefits and for the bus driver position, he described his job at AAA as entailing the installation of batteries and the changing of tires, SMF ¶ 15, and AAA itself views these tasks as essential functions of the job, Dkt. No. 27-4 ("Swiatek Affidavit") ¶ 6. The record before the court thus permits only one conclusion: changing tires and installing batteries were two of the essential functions of the roadside technician position.

There is also no genuine dispute that, at the very least, Rowe was unable to perform these two essential functions. As discussed above, soon after Rowe was diagnosed with cancer, AAA received a letter from the oncology practice where Rowe sought treatment that indicated he was unable to "change tires or perform battery work, due to complications associated with adenocarcinoma of the cecum." Id. ¶ 3; Ex. E at 2. Moreover, one of Rowe's doctors informed AAA that Rowe's restrictions would be "permanent." SMF ¶ 4; Ex. F.[4] Rowe effectively concedes that he could not have performed all of the essential functions of the road technician position when he states in his affidavit that he "could perform 27 out of the 29 essential functions

---

[4] To the extent that Rowe faults AAA for refusing to provide him with a leave of absence, AAA's reasonable belief that Rowe's restrictions were permanent relieved it of any obligations in this regard. See Alston v. Microsoft Corp., 851 F. Supp. 2d 725, 733–34 (S.D.N.Y. 2012) ("[T]he Second Circuit has explained that where there is no indication of when an employee will return, an employer has no obligation to grant an employee 'an indefinite leave of absence.'" (quoting Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 9 (2d Cir. 1999))), aff'd, 519 F. App'x 23 (2d Cir. 2013) (per curiam).

of [that] position." Rowe Aff. ¶ 13. Although in the same affidavit Rowe also asserts that he "could have worked part-time during the three-month period before my termination," id. ¶ 10, he provides no evidence to support this claim, and it contradicts his own statement that he could not perform two of the essential functions of the job. Rowe fails to explain how a part-time version of the road technician job would work for him in light of his inability to perform all of its essential functions. Thus, Rowe's statement that he could have held the road technician job on a part-time basis does not create a triable issue of fact. See BanxCorp v. Costco Wholesale Corp., 978 F. Supp. 2d 280, 299 (S.D.N.Y. 2013) ("[A] self-serving, contradictory affidavit fails to raise a triable issue of fact when it conflicts with documentary evidence." (quoting Christiana Bank & Tr. Co. v. Dalton, No. 06-CV-3206, 2009 WL 4016507, at *4 (E.D.N.Y. Nov. 17, 2009))); see also Lee Loi Indus., Inc. v. Impact Brokerage Corp., 473 F. Supp. 2d 566, 570 (S.D.N.Y. 2007) ("While the Court may not assess credibility on summary judgment, if the evidence is contradictory or implausible, it may be disregarded." (citing Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 572 (2d Cir. 1991))).

Moreover, Rowe fails to point to any reasonable accommodation that would have enabled him to perform the essential functions of the road technician job. Indeed, Rowe appears to concede that he was not qualified for the job as a result of his condition. Responding to AAA's assertion that it fired him because of its understanding that his condition would permanently prevent him from performing the essential functions of his job, Rowe states that "Defendant is, of course, referring to the Roadside Technician Job, which is NOT the job that Plaintiff was seeking, which was a call center job the essential functions of which Plaintiff COULD indeed perform." Opp'n pt. 4, at 14–15. This statement could be construed as an abandonment of the

claim that Rowe was otherwise qualified for the roadside technician position. See Wick v. Wabash Holding Corp., 801 F. Supp. 2d 93, 105 (W.D.N.Y. 2011) ("[T]he court may, in its discretion, deem Plaintiff's . . . claim abandoned based on Plaintiff's failure to argue in opposition to summary judgment on the claim." (citing Molinari v. Bloomberg, 564 F.3d 587, 609 n.15 (2d Cir. 2009))). In any event, even if the Court does not deem this claim abandoned, Rowe has simply failed to produce any evidence of an accommodation relating to the roadside technician job.

### 2. The Contact Center Position

But, as the statement quoted above shows, Rowe does propose a different kind of accommodation: transfer to a vacant Contact Center position, for which he was allegedly "amply qualified." Opp'n pt. 4, at 16. The ADA provides that "reassignment to a vacant position" may constitute a reasonable accommodation. § 12111(9). To prove that reassignment is a reasonable accommodation, the plaintiff "must demonstrate the existence, at or around the time when accommodation was sought, of an existing vacant position to which she could have been reassigned." McBride, 583 F.3d at 97–98 (citing Jackan v. N.Y.S. Dep't of Labor, 205 F.3d 562, 566–67 (2d Cir. 2000)). Moreover, the plaintiff must be qualified for the vacant position. Id. at 98 (citing Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 99 (2d Cir. 1999)).

AAA argues that Rowe was not qualified for the Contact Center position. Mem. at 13–14. AAA emphasizes that Rowe cannot satisfy the first part of the test for determining qualification under the ADA, namely, the requirement that an ADA plaintiff show that he can meet the "requisite skill, experience, education and other job-related requirements of the employment position such individual . . . desires." § 1630.2(m). "Nothing in the ADA requires an employer to

abandon its legitimate, nondiscriminatory company policies defining job qualifications, prerequisites, and entitlements to intra-company transfers." Felix v. N.Y. City Transit Auth., 154 F. Supp. 2d 640, 655 (S.D.N.Y. 2001) (quoting Dalton v. Subaru-Isuzu Auto. Inc., 141 F.3d 667, 678 (7th Cir. 1998)); see also Malone v. Shallcross, No. 02-CV-8126, 2004 WL 2534382, at *4 (N.D. Ill. Nov. 8, 2004) (granting summary judgment in favor of defendant-employer where plaintiff-employee, who could not pass "the required skills test for several of the [vacant] positions," failed to identify "any vacant positions for which she was qualified but was denied for an impermissible reason").

Based on the evidence before the Court, AAA requires those seeking a position at the Contact Center to pass the simulation assessment, which "corresponds with the minimal skills necessary to perform a call center job." Swiatek Aff. ¶ 12. The document that describes Rowe's performance on the test states that "David J Rowe's overall score of 58 (out of a possible 100) does not meet the minimum passing score; therefore David J Rowe is not recommended to proceed further in the selection process." Dkt. No. 27-11 ("Exhibit G") at 1. On the other hand, the documents setting forth the results for the successful applicants, all of whom scored above sixty-two, noted that these applicants were recommended to proceed further in the selection process because they passed the assessment. Dkt. No. 27-12 ("Exhibit H") at 1–6. From the record before the Court, therefore, it appears that AAA refused to hire applicants who did not receive a passing score on the assessment.

Rowe has failed to address AAA's assertion that he did not meet the job-related requirements for the Contact Center position. He has not provided any evidence suggesting that he did in fact pass the simulation assessment, or that AAA sometimes hired people for Contact

Center positions who failed the test. Instead, he disparagingly refers to the assessment as a "personality test," and goes on to say that he failed it because he took it only a few days after he was diagnosed with cancer, which hindered his ability to perform the assigned tasks. Opp'n pt. 4, at 16; Rowe Aff. ¶ 13. Yet Rowe's description of his feelings when he took the test, which is set forth in his affidavit, contradicts his own deposition testimony, in which he stated that the only things he could remember from that day were that he took tests of some kind and that he believed AAA was not serious about hiring him for the position. Dkt. No. 32-2 ("Exhibit 2") at 121:20–122:25. Thus, Rowe's self-serving statement in his affidavit that his failing grade on the assessment can be explained by distress over his recent cancer diagnosis fails to address AAA's assertions regarding his qualifications for the Contact Center position. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony." (citing Bickerstaff v. Vassar Coll., 196 F.3d 435, 455 (2d Cir. 1999))).

Rowe argues that he was qualified for the Contact Center position because of his "excellent customer service skills," which can be seen in the praise he received from AAA customers and management. Opp'n pt. 4, at 16. Again, this argument does not address the evidence in the record demonstrating that Rowe failed to meet one of the prerequisites for holding a Contact Center position: passing the simulation assessment. The evidence of Rowe's customer service skills is more accurately viewed as suggesting that he could perform what would arguably be an essential function of a Contact Center job—interacting well with customers. That goes to the second part of the two-part test for determining qualification under

13

the ADA, namely, the question whether the plaintiff can perform the essential functions of the job, with or without a reasonable accommodation. § 1630.2(m). However, even if the Court accepted that Rowe could perform all of the essential functions of the position—a contestable proposition given Rowe's numerous work-related infractions, Mem. at 3—he would still have failed to establish that he was otherwise qualified on the record before the Court. That is because he has not satisfied the first part of the test for demonstrating qualification under the ADA, namely that he met all the job-related requirements for the position in question. § 1630.2(m). Rowe's failure to pass the assessment, which he does not dispute was a necessary condition for obtaining the position in question, means that—based on the record before the Court—he has not demonstrated that he was qualified for the job.

Rowe has failed to put forth credible evidence suggesting that he was otherwise qualified for either the roadside technician position or the vacant Contact Center position. Thus, he has failed to estabish a prima facie case under the ADA. See Serrano v. Shield Inst. of David, Inc., No. 94-CV-6745, 1997 WL 167042, at *6 (S.D.N.Y. Apr. 9, 1997) (finding that, even assuming the plaintiff could establish that he was disabled, he "still would fail to state a prima facie case under the ADA, because he has failed to show that he was otherwise qualified to perform the job [in question]").

Despite Rowe's failure to adequately address AAA's assertions regarding his qualifications for the Contact Center position, the Court elects not to immediately grant summary judgment. In a joint letter motion filed on May 31, 2016, the parties requested an extension of the discovery deadline, in part because Rowe's attorney still intended to depose several AAA employees. Dkt. No. 25 ("Letter Motion") at 1–2. The Court granted the extension, Dkt. No. 26,

yet there it is unclear to the Court whether Rowe's attorney ever conducted these depositions. In lieu of deposition transcripts or interrogatories, Rowe's attorney has filed an affidavit, Rowe Aff., which also contains customer-service reviews regarding Rowe's performance as a road technician, and a copy of the NYSDHR investigation into his case, Ex. 3, which may not even be admissible evidence in this case, see DeJohn v. Wal-Mart Stores E., LP, No. 09-CV-1315, 2012 WL 3679204, at *1 n.3 (N.D.N.Y. Aug. 17, 2012) ("Whether the [Division of Human Rights] decision is admissible evidence . . . is subject to the sound discretion of the district court." (citing Sadki v. SUNY Coll. at Brockport, 310 F. Supp. 2d 506, 517 (W.D.N.Y. 2004))). Further, the NYSDHR investigation did not even address the issue of Rowe's qualifications for the Contact Center position. See Ex. 3.

Under Rule 56(e)(1) of the Federal Rules of Civil Procedure, "[i]f a party fails to properly . . . address another party's assertion of fact . . . the court may . . . give an opportunity to properly . . . address the fact." Although Rowe has failed to address material facts asserted by AAA concerning his qualifications for the Contact Center position, the Court will exercise its discretion under Rule 56(e)(1) to give Rowe an opportunity to properly do so. See Noel v. Interpublic Grp. of Cos. Inc., No. 12-CV-2996, 2013 WL 1955879, at *1 (S.D.N.Y. May 13, 2013) ("[E]ven if the moving party satisfies its burden, the Court in its discretion may still decline to grant summary judgment." (citing Fed. R. Civ. P. 56(e)(1))). Because Rowe has effectively conceded that he could not perform all the essential functions of the road technician job, Rowe Aff. ¶ 13, the Court will not allow further development of the record on that issue. However, the Court will grant Rowe sixty days to conduct additional discovery relevant to the question whether he was otherwise qualified for the Contact Center position. Within this sixty-

day period, Rowe may file a supplemental brief setting out the evidence obtained and its relevance to the issue of his qualifications for the Contact Center position. Thirty days after Rowe files his supplemental brief, AAA may file a response addressing the newly obtained evidence. The Court will reserve decision on the pending Motion until it has received this supplemental briefing and evidence.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff David Rowe shall have **sixty (60)** days in which to conduct discovery relating to the question whether he was otherwise qualified for the AAA Contact Center position, and within this **sixty (60)** day period, Rowe shall file a supplemental brief setting out the evidence obtained and its relevance to the issue of his qualifications for the Contact Center position; and it is further

**ORDERED**, that Defendant AAA Western and Central New York, Inc. shall have **thirty (30)** days after the submission of Rowe's supplemental brief to respond to Rowe's submission; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: December 27, 2016
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge